1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JASON LEE BRADLEY,

                            Plaintiff,

        v.                                          C22-0581 TSZ

SWEDISH HEALTH SERVICES                              ORDER
d/b/a SWEDISH MEDICAL
CENTER, et al.,

                            Defendants.

THIS MATTER comes before the Court on Plaintiff's motion for partial summary judgment and to strike affirmative defenses, docket no. 53, and Defendant's motion for summary judgment, docket no. 58.  The Court having previously entered a Minute Order, docket no. 74, granting in part and denying in part Plaintiff's motion, and granting in part and denying in party Defendant's motion, now enters the following Order explaining its reasoning.

**Background**

**A.    Initial Complaints**

Plaintiff Jason Lee Bradley began working for Defendant Swedish Health Services as a Supervisor in the Environmental Services Department ("EVS") on September 28, 2020.  Bradley Decl. ¶ 4 (docket no. 55).  Plaintiff is gay and has speech and hearing impediments, including tinnitus.  *Id.* at ¶ 5; Def.'s Rule 30(b)(6) Dep. at 110:21–111:2, Ex. B to Wong Decl. (docket no. 56-2).  Harriett Sculfield began supervising Plaintiff sometime in December 2020.  Am. Answer at ¶ 21 (docket no. 26).

On December 28, 2020, Plaintiff complained to EVS Director Doug Green, Sculfield's supervisor, that Sculfield was discriminating against Plaintiff on the basis of his disability and sexual orientation, subjecting him to a hostile work environment, and falsifying documents.  Green Dep. at 95:5–9, 97:20–99:25; Ex. H to Wong Decl. (docket no. 56-8).  The next day Plaintiff submitted a written report to Green containing his allegations regarding Sculfield's conduct.  *See id.* at Dep. Ex. 20 (docket no. 56-8 at 40–42).  This document, however, only discusses allegations of discriminatory conduct relating to Plaintiff's disability and the falsification of documents and does not make any allegations of sexual orientation discrimination.  *See id.*  Green did not forward Plaintiff's report to Defendant's Human Resources Department, but did share Plaintiff's report with Sculfield, in violation of Defendant's policies.  Def.'s Rule 30(b)(6) Dep. at 94:2–95:4, Ex. B. to Wong Decl. (docket no. 56-2); Def.'s Rule 30(b)(6) Dep. at 97:9–16, Ex. C to Wong Decl. (docket no. 57); Gillis Dep. at Dep. Ex 133, Ex. N to Wong Decl. (docket no. 56-14).

In January 2021, Plaintiff sent an email to Michael Allen, a Human Resources employee.  Bradley Dep at 123:4–25 & Dep. Ex. 2, Ex. A to Rosen Decl. (docket no. 59-1 at 1–69); Def.'s Rule 30(b)(6) Dep. at 108:1–10, Ex. B. to Wong Decl. (docket no. 56-2).  This email alleged that Plaintiff was subjected to workplace discrimination on the basis of his sexual orientation.  Bradley Dep at 123:4–25 & Dep. Ex. 2, Ex. A to Rosen Decl. (docket no. 59-1 at 1–69).  Defendant did not formally open an investigation into Plaintiff's December 2020 complaint until Plaintiff sent the January 2021 email.  Def.'s Rule 30(b)(6) Dep. at 108:1–10, Ex. B. to Wong Decl. (docket no. 56-2).

Defendant investigated Plaintiff's December 2020 and January 2021 complaints.  Freeman-Chaudhry Dep. at 45:22–46:3, Ex. B to Rosen Decl. (docket no. 59-1 at 70–91).  During this investigation, Sculfield contended that she was not aware of Plaintiff's sexual orientation or disabilities at the times relevant to Plaintiff's initial complaints.  *See id.* at 70:6–13, 72:14–18 & Dep. Ex. 21.  Defendant was unable to identify any evidence to substantiate Plaintiff's claims beyond his own conclusory statements.  *See id.* at 51:11–52:22.

**B.    Follow up to the Investigation, the "Immersion Plan", and Plaintiff's Administrative Leave**

After this initial investigation, Human Resources followed up with Plaintiff routinely through March 2021 regarding his work and interactions with Sculfield.  Bradley Dep. at 156:2–161:8, Ex. A to Rosen Decl. (docket no. 59-1 at 1–69).  During these follow up meetings, Plaintiff expressed concern about the level of training he had received.  *Id.* at 63:2–64:2; Freeman-Chaudhry Dep. at 51:11–52:2, Ex. B to Rosen Decl.

(docket no. 59-1 at 70–91); Green Dep. 136:9–22, Ex. C to Rosen Decl. (docket no. 59-1 at 92–105).  Plaintiff thereafter received additional training through an "Immersion Plan." Gillis Dep. at 63:7–9, Ex. N to Wong Decl. (docket no. 56-14); Gillis Dep. at 73:9–76:23, Ex. O to Wong Decl. (docket no. 57-6); Bradley Dep. at 158:10–159:16, Ex. A to Rosen Decl. (docket no. 59-1 at 1–69); Davis Dep. at 54:14–24, 78:20–79:4, Ex. D to Rosen Decl. (docket no. 59-1 at 106–120).  Plaintiff, however, at one point told Green he was "concerned" by the Immersion Plan "because he [felt] he [was] being singled out with the training he [was] receiving."  Green Dep. at 149:16–150:10, Ex. I to Wong Decl. (docket no. 57-3).

Plaintiff was placed on paid administrative leave on February 11, 2021.  Green Dep. at 127:15–128:2, 129:18-21, Ex. H. to Wong Decl. (docket no. 56-8); Gillis Dep. at 77:2–5, Ex. O to Wong Decl. (docket no. 57-6); Bradley Dep. at 65:10–67:24, Ex. A to Rosen Decl. (docket no. 59-1 at 1–69).  Plaintiff was placed on paid administrative leave based on concerns that he had been untruthful in allegations he made regarding an incident with another EVS supervisor, and for failing to cooperate in the investigation into those allegations.  Bradley Dep. at 65:10–67:24, Ex. A to Rosen Decl. (docket no. 59-1 at 1–69); *see* Green Dep. at 125:7–126:15 & Dep. Ex. 172, Ex. C to Rosen Decl. (docket no. 59-1 at 92–105).  Plaintiff returned to work on March 1, 2021.  Green Dep. at 129:11–17, Ex. C to Rosen Decl. (docket no. 59-1 at 92–105); Freeman-Chaudhry Dep. at 78:18–21, Ex. B to Rosen Decl. (docket no. 59-1 at 70–91).

1   **C.    April 2021 Complaints**

2          In or around April 13, 2021, another of Defendant's employees filed a complaint

3   against Plaintiff, alleging that Plaintiff had made sexual gestures towards the employee.

4   Bradley Dep. at 169:24–170:7, Ex. A to Rosen Decl. (docket no. 59-1 at 1–69); Seybolt

5   Dep. at 85:16–86:12, Ex. E to Rosen Decl. (docket no. 59-1 at 121–155).  Plaintiff also

6   filed several of his own complaints during April 2021.  Specifically, he filed complaints

7   alleging that: (1) Sculfield pushed him on the back on April 14, 2021, (2) that, during an

8   April 22, 2021, meeting regarding the other employee's complaint against Plaintiff,

9   Sculfield and Human Resources employee Jodi Lynn Seybolt discriminated against him

10  on the basis of his sexuality and disability by referring to him as "bubbly" and

11  "flamboyant", and (3) that Sculfield retaliated against Plaintiff by issuing him a

12  "Corrective Action" following the April 22 meeting.  *See* Bradley Dep. at 183:24–186:4,

13  Ex. A to Rosen Decl. (docket no. 59-1 at 1–69); Flowers Dep. at 80:14–25 & Dep. Ex.

14  16, Ex. F to Rosen Decl. (docket no. 59-1 at 156–167).  Human Resources employee Jon

15  Flowers was assigned to investigate Plaintiff's complaints.  *See id.*  Flowers found

16  Plaintiff's complaints to be unsubstantiated.  Flowers Dep. at 83:3–84:5, Ex. L to Wong

17  Decl. (docket no. 56-12).

18  **D.    June 2021 PIP**

19          Plaintiff was placed on a performance improvement plan ("PIP") on June 18,

20  2021.  Bradley Dep. at 195:6–17 & Dep. Ex. 8, Ex. A to Rosen Decl. (docket no. 59-1 at

21  1–69).  The PIP was premised on concerns that Plaintiff had insufficient supervisory

22  skills, was unprofessional and aggressive towards coworkers, and failed to accept

23

feedback or instructions. *See id.* at 195:6–202:15 & Dep. Ex. 8. Seybolt, who drafted the PIP, noted that Plaintiff had not been assigned any direct reports and that there was "very skinny documentation of performance concerns." Seybolt Dep. at 156:12–157:10, Ex. K to Wong Decl. (Docket no. 57-4); Seybolt Dep. at 157:11–158:17 & Dep. Ex. 9, Ex. J to Wong Decl. (docket no. 56-10). Defendant's employees Vice President Mike Denny, Chief Human Resources Officer Cindy Paget, and Executive Director Andrew Davis jointly presented the PIP to Plaintiff at a June 18, 2021, meeting. Davis Dep. at 89:15–25, Ex. E to Wong Decl. (docket no. 57-1); Paget Dep. at 73:4–9, Ex. G to Wong Decl. (docket no. 57-2). As an alternative to signing the PIP, Plaintiff was also presented with a severance package. Paget Dep. at 65:1–19, 73:4–9, Ex. G to Wong Decl. (docket no. 57-2). Plaintiff chose to sign the PIP, which set a 30-day time frame to reevaluate Plaintiff's performance. *See* Bradley Dep at 195:6–17 & Dep. Ex. 8, Ex. A to Rosen Decl. (docket no. 59-1 at 1–69).

Plaintiff's workplace conduct initially improved after he signed the PIP. *Id.* at 202:22–203:8. Notwithstanding this initial improvement, Plaintiff continued to have workplace performance issues. Seybolt Dep. at 180:4–8 & Dep. Ex. 50, Ex. E to Rosen Decl. (docket no. 159-1 at 121–55). Even after Plaintiff signed the PIP, Sculfield did not assign him any direct reporting employees as required by the PIP. Seybolt Dep. at 175:11-176:20, Ex. J to Wong Decl. (docket no. 56-10). Because of Plaintiff's continued workplace performance issues, and because he had not been assigned any direct reporting employees, Seybolt recommended a 60-day extension of the PIP. *Id.* at 175:11–177:25; Seybolt Dep. at 180:9–20, Ex. K to Wong Decl. (docket no. 57-4).

**E.**     <u>The August 31, 2021, Meeting and Plaintiff's Alleged Firing</u>

Sculfield presented the extended PIP to Plaintiff during an August 31, 2021, meeting.  Bradley Decl. ¶ 17 (docket no. 55); Seybolt Dep. at 188:6–10 & Dep. Ex. 53, Ex. E to Rosen Decl. (docket no. 59-1 at 121–55).  Plaintiff allegedly became agitated and yelled at Sculfield during the meeting and refused to sign the PIP.  Seybolt Dep. at 188:6–10 & Dep. Ex. 53, Ex. E to Rosen Decl. (docket no. 59-1 at 121–55); Seybolt Dep. at 183:8–184:8, Ex. J to Wong Decl. (docket no. 56-10).  Because he was becoming agitated, Sculfield sent Plaintiff home for the day and asked him to leave his keys and badge.  *See id.*

Plaintiff does not dispute that he refused to sign the extended PIP.  Bradley Decl. ¶ 17 (docket no. 55).  Plaintiff, instead, maintains that he asked for time to review it with "someone higher up," which Sculfield refused.  *Id.*; Bradley Dep. at 209:21–210:16, Ex. Y to Wong Decl. (docket no. 62-10).  Plaintiff asserts that Sculfield fired him during the meeting because of his refusal to sign the PIP.  Bradley Decl. at ¶ 18 (docket no. 55); Bradley Dep. at 212:17–21, Ex. Y to Wong Decl. (docket no. 62-10).

After the August 31, 2021, meeting, Plaintiff filed an additional HR complaint against Sculfield.  Gillis Dep. at 99:10–100:9, Ex. N to Wong Decl. (docket no. 62-8).  An HR employee called Plaintiff after he filed the complaint and "told him he hadn't been fired" and that Defendant wanted to meet with him about the next steps for an extension of the PIP.  *Id.*  At a September 9, 2021, meeting with Sculfield and Davis, Plaintiff maintained that he had been fired.  *See* Davis Dep. at 114:9–16 & Dep. Ex. 86, Ex. D to Rosen Decl. (docket no. 59-1 at 106–20); Gillis Dep. at 104:8–106:1, Ex. N to

Wong Decl. (docket no. 62-8); Bradley Dep. at 214:8–215:16, Ex. Y to Wong Decl. (docket no. 62-10).  Plaintiff was scheduled for several work shifts after the September 9 meeting but did not show up for any of the shifts.  *See* Davis Dep. at 114:9–16 & Dep. Ex. 86, Ex. D to Rosen Decl. (docket no. 59-1 at 106–20).  On September 15, 2021, Davis notified Plaintiff via letter that he should contact Defendant within the next two weeks to schedule a meeting about his return to work, or he would be considered to have voluntarily resigned his position.  *See id.*  Plaintiff ignored the letter from Davis.  Bradley Dep. at 216:9–22, Ex. Y to Wong Decl. (docket no. 62-10).  Defendant processed Plaintiff's separation as a voluntary resignation as of September 30, 2021.  *See* Davis Dep. at 114:9–16 & Dep. Ex. 86, Ex. D to Rosen Decl. (docket no. 59-1 at 106–20); Ex. D to Rosen Decl. (docket no. 67-4) (SWED_JB_000894) (paystub for pay period beginning September 26, 2021, and ending October 9, 2021, indicating that Plaintiff's unused vacation days had been cashed out).

Defendant asserts that Plaintiff was notified that he was not fired.  *See* Gillis Dep. at 105:11–106:1, Ex. N to Wong Decl. (docket no. 62-8).  Plaintiff, however, maintains that he was never notified that he was not fired, but rather, that he was told that his termination could be revoked.  Bradley Dep. at 213:14–214:7, Ex. Y to Wong Decl. (docket no. 62-10).  Plaintiff filed for unemployment benefits on September 1, 2021. Bradley Decl. ¶ 19 (docket no. 55); Ex. W to Wong Decl. (docket no. 56-23).  Defendant, however, continued to pay Plaintiff his regular salary and Plaintiff did not return any of these payments.  *See* Ex. D to Rosen Decl. (docket no. 67-4) (SWED_JB_000891–894)

(Plaintiff's paystubs for pay periods starting August 15, 2021, and ending October 9, 2021).

Plaintiff alleged thirteen causes of action against Defendant arising under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Washington Law Against Discrimination ("WLAD"), and state common law. He now moves for partial summary judgment. *See* docket no. 53. Plaintiff seeks judgment that he was constructively discharged as a matter of law, and to strike Defendant's affirmative defenses. *See id.* Defendant opposes Plaintiff's partial motion, *see* docket no. 63, and also moves for summary judgment on all of Plaintiff's claims, *see* docket no. 58.

**Discussion**

**A.      Summary Judgement Standard**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257. When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521,

1   529 (2006) ("Rule 56 'mandates the entry of summary judgment, after adequate time for

2   discovery and upon motion, against a party who fails to make a showing sufficient to

3   establish the existence of an element essential to that party's case, and on which that

4   party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

5   **B.   Disparate Treatment and Discrimination Claims (Claims Nos. 1, 5, 7 & 10)**

6           Courts use the *McDonnell Douglas* burden shifting framework to evaluate

7   discrimination and disparate treatment claims brought under the ADA, Title VII, and the

8   WLAD.  *See McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300, 1310–13 (W.D.

9   Wash. 2014) (applying *McDonnell Douglas* framework to Title VII and WLAD disparate

10  treatment claims); *Goodson v. Triumph Composite Sys.*, No. 13-CV-0289, 2014 WL

11  6908743, at *4–7 (E.D. Wash. Dec. 8, 2014) (applying *McDonnell Douglas* framework to

12  ADA and WLAD disparate treatment claims).  To establish a *prima facie* claim for

13  discrimination or disparate treatment under federal law, Plaintiff must show that "(1) [he]

14  is a member of a protected class; (2) [he] performed [his] job satisfactorily, was qualified,

15  and met the legitimate expectations of [his] employer; (3) [he] suffered an adverse

16  employment action; and (4) the defendant-employer treated [him] differently from a

17  similarly situated employee who does not belong to the same protected class."[1]

18  *McDaniels*, 57 F. Supp. 3d at 1310; *see also Goodson*, 2014 WL 6908743, at *5.  Under

19

20  _____

21  [1] To establish a *prima facie* case of discrimination under Washington state law, Plaintiff need only
    establish that (1) he is a member of a protected class, (2) he was doing satisfactory work, and (3) he
    suffered an adverse employment action.  *See Mackey v. Home Depot USA, Inc.*, 12 Wn. App. 2d 557, 571,
    459 P.3d 271 (2020); *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cnty.*, 189 Wn.2d 516, 527–29, 404
22  P.3d 464 (2017) (en banc).

23

1   federal law, an alternative to proving he was treated differently from a similarly situated

2   employee who does not belong to the same protected class, Plaintiff "can provide

3   evidence of 'other circumstances surrounding the adverse employment action [that] give

4   rise to an inference of discrimination.'" *McDaniels*, 57 F. Supp. 3d at 1310 (alteration in

5   original) (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)).

6       If Plaintiff is able to establish a *prima facie* case of discrimination or disparate

7   treatment, the burden shifts to Defendant "to articulate a legitimate, non-discriminatory

8   reason for taking the challenged action." *Goodson*, 2014 WL 6908743, at *5 (citing

9   *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000)).  If

10  Defendant is able to articulate such a reason, the burden shifts back to Plaintiff "to

11  demonstrate that the proffered reason is untrue 'either directly by persuading the court

12  that a discriminatory reason more likely motivated the employer or indirectly by showing

13  that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Tex.*

14  *Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)).

15      For purposes of a discrimination claim, "an adverse employment action is one that

16  materially affects the compensation, terms, conditions, or privileges of employment."

17  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotations and

18  alterations omitted).  Plaintiff claims that being placed on administrative leave and being

19  placed on the PIP constituted adverse employment actions.  When he was placed on

20  administrative leave in February 2021, Plaintiff received his regular salary and he

21  returned to work in his previous position.  Plaintiff has provided no case law as to how

22  such an occurrence could constitute an adverse employment action.  The Court concludes

23

that Plaintiff's administrative leave did not constitute an adverse employment action for purposes of his discrimination and disparate treatment claims.

In June 2021, Plaintiff was placed on a PIP.  PIPs are not adverse employment actions for purposes of a discrimination or disparate treatment claim.  *See Hopkins v. McDonald*, No. C15-1918, 2016 WL 3617860, at *3 n.2 (W.D. Wash. July 6, 2016) ("A written warning that does not change the terms and conditions of employment does not rise to the level of an adverse employment action."); *Cozzi v. Cnty. of Marin*, 787 F. Supp. 2d 1047, 1061 (N.D. Cal. 2011) ("Written warnings and performance improvement plans are not adverse actions where they do not materially affect the terms and conditions of employment.").

Plaintiff contends that he was terminated by Sculfield in August 2021.  This is disputed and Defendant asserts that Plaintiff was placed on administrative leave at or after the August 31 meeting, and subsequently failed to report for his scheduled shifts. The Court finds that there is a dispute of material fact as to whether Plaintiff experienced an adverse employment action during or after the August 31 meeting.

## 1.   <u>ADA Discrimination Claim (Claim No. 1)</u>

To establish an ADA discrimination claim, Plaintiff must show that his disability was *the* but for cause of the adverse employment action.  *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019).  In the context of an ADA claim, but for causation requires Plaintiff to do more than "show only that a disability was a motivating factor of the adverse employment action." *Id.*  For purposes of his ADA discrimination claim, the only adverse employment action Plaintiff may have experienced was his alleged

termination at the August 31 meeting.  The record, however, shows that Plaintiff made no complaints after May 4, 2021, until after the August 31 meeting with Sculfield.  *See* Def.'s Rule 30(b)(6) Dep at 126:6–9, Ex. B to Wong Decl. (docket no. 62-2).  Moreover, Sculfield made derogatory comments about other employees' mannerisms and pronunciation.  *See* Bradley Dep. 80:21–83:9, Ex. A to Rosen Decl. (docket no 59-1 at 1–69).  Given the several month delay between Plaintiff's last complaint and the alleged adverse employment event, and that Sculfield treated Plaintiff in a similar manner to employees who were not disabled, there is no dispute of material fact that Plaintiff's disability was not *the* but for cause of his alleged termination.  Accordingly, Plaintiff's ADA discrimination claim is DISMISSED.

2. **Title VII Disparate Treatment and WLAD Discrimination (Claim Nos. 5, 7, & 10)**

Title VII also adopts a "because of" or "but for" causation test.  *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020).  In the context of Title VII, however, but for causation requires only that the protected characteristic be *a* cause.  *See id.*  This "more forgiving" causation standard is supported by the amendment of Title VII "to allow a plaintiff to prevail merely by showing that a protected trait like sex was a 'motivating factor' in a defendant's challenged employment practice."  *See id.* at 1739–40 (citing the Civil Rights Act of 1991, § 107, 105 Stat. 1075, codified at 42 U.S.C. § 2000e–2(m)).  Similarly, under the WLAD, Plaintiff need only show that his disability was a "substantial factor" meaning "that the protected characteristic was a significant motivating factor bringing about" the alleged adverse employment action.  *Scrivener v.*

1  *Clark Coll.*, 181 Wn.2d 439, 444, 334 P.3d 541 (2014) (en banc) (internal citations

2  omitted).  Despite the several month delay between Plaintiff's complaints and the August

3  31 meeting, Sculfield was aware of Plaintiff's sexual orientation, his disability, and that

4  he had made complaints against her alleging discrimination on those grounds.  There is a

5  dispute of material fact as to whether Plaintiff's disability and/or sexual orientation were

6  a factor or a motivating factor in Sculfield's alleged decision to terminate him.  Plaintiff's

7  Title VII disparate treatment and WLAD discrimination claims will remain for trial.

8  **C.**   **Failure to Accommodate Claims (Claim Nos. 3 & 9)**

9  To establish a *prima facie* ADA failure to accommodate claim, Plaintiff "must

10  show that '(1) he is disabled within the meaning of the ADA; (2) he is a qualified

11  individual able to perform the essential functions of the job with reasonable

12  accommodation; and (3) he suffered an adverse employment action because of his

13  disability.'"  *Hotchkiss v. CSK Auto Inc.*, 918 F. Supp. 2d 1108, 1123 (W.D. Wash. 2013)

14  (quoting *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir.

15  2012).  To establish a *prima facie* WLAD failure to accommodate claim, Plaintiff must

16  show

17      "(1) that he had a sensory, mental, or physical abnormality that
    substantially limited his or her ability to perform the job; (2) that he was

18      qualified to perform the essential functions of the job in question; (3) that
    he gave his employer notice of the abnormality and its accompanying

19      substantial limitations; and (4) upon receiving notice, the employer failed to
    affirmatively adopt measures that were available to and medically

20      necessary to accommodate the abnormality."

21  *Id.* (citing *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 145 (94 P.3d 930 (2004)).

22

23

1    Plaintiff testified at his deposition that that he did not ask for any accommodation

2    while employed by Defendant because his disabilities were not affecting his job duties.

3    Bradley Dep. at 219:23–220:1, Ex. A to Rosen Decl. (docket no. 59-1 at 1–69).

4    Plaintiff's arguments as to why his failure to accommodate claims should not be

5    dismissed address only hypothetical situations and not his actual job responsibilities.  In

6    light of Plaintiff's deposition testimony, Defendant did not fail to accommodate his

7    disabilities.  Accordingly, Plaintiff's failure to accommodate claims, claims nos. 3 & 9,

8    are DISMISSED.

9    **D.    Retaliation Claims (Claim Nos. 4, 6, & 11)**

10    To establish a *prima facie* case of retaliation under the ADA, Title VII, and the

11    WLAD, Plaintiff must "demonstrate that: '(1) [he] engaged in a protected activity, (2)

12    [he] suffered an adverse employment action, and (3) there was a causal link between [his]

13    activity and the employment decision.'"  *Washington v. Horning Bros., LLC*, 339 F.

14    Supp. 3d 1106, 1129 (E.D. Wash. 2018) (quoting *Stegall v. Citadel Broad. Co.*, 350 F.3d

15    1061, 1065 (9th Cir. 2003)).

16    For purposes of a retaliation claim, "an adverse employment action is adverse

17    treatment that is reasonably likely to deter employees from engaging in protected

18    activity." *Ray v. Henderson*, 217 F.3d 1234, 1237 (9th Cir. 2000); *see also Boyd v. State*

19    *Dep't of Soc. and Health Servs.*, 187 Wn. App. 1, 13, 349 P.3d 864 (2015).  "Although

20    being placed on paid administrative leave is not an adverse action for a direct

21    discrimination claim, it is retaliatory conduct."  *Waite v. Gonzaga Univ.*, No. 217-CV-

22    00416, 2019 WL 544947, at *5 (E.D. Wash. Feb. 11, 2019) (citing *Michael v. Caterpillar*

23

1    *Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007) and *Acosta v. Brain*, 910 F.3d 502,

2    513 (9th Cir. 2018)); *accord McMinimee v. Yakima Sch. Dist. No. 7*, 1:18-CV-3073, 2021

3    WL 1559369, at *18 (E.D. Wash. Mar. 26, 2021).  Written disciplinary actions or

4    placement on a performance improvement plan can also be considered adverse

5    employment actions for purposes of a retaliation claim.  *See Edman v. Kindred Nursing*

6    *Ctrs. W., L.L.C.*, No. C14-1280, 2016 WL 6836884, at *7 (W.D. Wash. Nov. 21, 2016)

7    (citing *Coburn v. PN II, Inc.*, 372 F. App'x 796, 801 (9th Cir. 2010)).  Because "an 'act

8    that would be immaterial in some situations is material in others,'" context matters when

9    evaluating alleged retaliatory actions.  *Burlington N. & Sante Fe Ry. Co. v. White*, 548

10   U.S. 53, 69 (2006); *see also Boyd*, 187 Wn. App. at 13.  "Accordingly, whether a

11   particular action would be viewed as adverse by a reasonable employee is a question of

12   fact appropriate for a jury."  *Boyd*, 187 Wn. App. at 13–14 (citing *Burlington N.*, 548

13   U.S. at 71–73 and *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 337 (5th Cir. 2008)).

14          While employed with Defendant, Plaintiff was placed on paid administrative

15   leave, had disciplinary actions entered in his employment record, and was placed on a

16   performance improvement plan.  All of these events occurred within weeks of Plaintiff

17   complaining about alleged discriminatory actions by Defendant's employees.  This

18   temporal proximity supports an inference of causation for each of the retaliation claims.

19   *See Ray*, 217 F.3d at 1244 ("That an employer's actions were caused by an employee's

20   engagement in protected activities may be inferred from proximity in time between the

21

22

23

protected action and the allegedly retaliatory employment decision." (internal quotations omitted)).

Defendant's argument that there was no adverse employment action because Plaintiff continued to file complaints, and was therefore not deterred from engaging in protected conduct, is unpersuasive.  That a retaliatory adverse employment "action turned out to be inconsequential goes to the issue of damages, not liability." *Id.* at 1241 (quoting *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997)).  There is a question for the jury as to whether any of the employment actions Plaintiff experienced would have deterred a reasonable employee from engaging in protected activity.  Accordingly, Plaintiff's retaliation claims under both federal and state law will remain for trial.

**E.**    **Hostile Work Environment on the Basis of Disability Claims (Claim Nos. 2 & 8)**

To establish a hostile work environment on the basis of disability claim under the ADA, Plaintiff must show that "(1) he has a disability; (2) that he was subjected to unwelcome harassment, (3) that the harassment was based on his disability; (4) that the harassment was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive working environment; and (5) that the employer knew or should have known about the harassment and failed to take prompt action to stop it." *Northrop v. Safeway, Inc.*, C16-350, 2017 WL 1543331, at *2 (W.D. Wash. Apr. 28, 2017) (internal citation omitted).

Establishing a hostile work environment on the basis of disability claim under the WLAD requires Plaintiff to show that similar elements have been satisfied.  *See id.* at *2

n.4 (citing *Robel v. Roundup Corp.*, 148 Wn.2d 35, 45, 59 P.3d 611 (2002)).  The Court

must "look at all the circumstances, including the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

performance."  *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001)

(internal quotations omitted).

   Plaintiff's allegations are not severe or pervasive enough to rise to the level of "a

discriminatorily hostile or abusive environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S.

17, 21 (1993).  He premises his hostile work environment claim on the disparaging

remarks directed towards him by Sculfield, and on one occasion by Seybolt, and on the

one instance of light physical contact with Sculfield.  Courts must be mindful of the fact

that they are not enforcing "a general civility code and that evidence showing sporadic

use of abusive language, gender-related jokes, and occasional teasing do not establish" a

hostile work environment claim.  *Wahlman v. DataSphere Techs., Inc.*, C12–1997, 2014

WL 794269, at *6 (W.D. Wash. Feb. 27, 2014) (quoting *EEOC v. Prospect Airport

Servs., Inc.*, 621 F.3d 991, 998 (9th Cir. 2010)).  Although Plaintiff's allegations are

concerning, they are not the type of conduct that is required to sustain a hostile work

environment claim.  *See, e.g., Brediger v. Gen. Nutrition Corp.*, C14-166, 2015 WL

5797095, at *5 (W.D. Wash. Oct. 2, 2015) (concluding alleged harassment was not

sufficiently severe or pervasive enough even though the plaintiff's allegations included

that her manager "treated her in a rude, demeaning, hostile manner every time he

interacted with her"); *Northrop*, 2017 WL 1543331, at *2–3 ("[O]ccasional insults by co-

1   workers and supervisors to which Mr. Northrop was allegedly subjected, though

2   undoubtedly unpleasant, was nothing more than isolated teasing and offhand comments

3   insufficient to give rise to an actionable claim for hostile work environment.").

4   Accordingly, Plaintiff's hostile work environment claims under both federal and state law

5   are DISMISSED.

6   **F.    Wrongful Discharge in Violation of Public Policy Claim (Claim No. 12)**

7          **1.    Defendant's Duplication Argument Fails**

8          Defendant argues that Plaintiff's wrongful discharge in violation of public policy

9   claim should be dismissed as being duplicative of his discrimination claims.  Def.'s Mot.

10  at 16 (docket no. 58).  However, under *Rose v. Anderson Hay & Grain Co.*, 184 Wn.2d

11  268, 358 P.3d 1139 (2015), Plaintiff can bring his wrongful discharge claim alongside his

12  statutory claims.[2]  Post-*Rose* cases have allowed a plaintiff to bring a wrongful discharge

13  claim alongside discrimination claims.  *See Quinn v. City of Vancouver*, C17-5969, 2021

14  WL 5182154, at *7 (W.D. Wash. June 9, 2021), *report and recommendation adopted*,

15  2021 WL 4190949 (W.D. Wash. Sept. 15, 2021); *Alexander v. U.S. Gypsum Co.*, C18-

16  0810, 2018 WL 4931625, at *3–4 (W.D. Wash. Oct. 11, 2018).[3]  In light of these post-

17

18

19  ────────────────────

20  [2] Notably, two of the cases Defendant relies on predate *Rose* and have their reasoning called into question
    by *Rose*.  *See Gamble v. Pac. Nw. Reg'l Council of Carpenters*, No. C14-0455, 2015 WL 402782 (W.D.
    Wash. Jan. 29, 2015); *Hochberg v. Lincare, Inc.*, No. CV-07-0031, 2008 WL 1913853 (E.D. Wash. Apr.

21  28, 2008), *aff'd*, 334 F. App'x 831 (9th Cir. 2009).

    [3] *See also Nettleton v. United Parcel Serv., Inc.*, C19-1684, 2021 WL 197133 (Jan. 20, 2021); *Simmons v.*

22  *Safeway, Inc.*, 820 F. App'x 579 (9th Cir. 2020).

23

1   *Rose* developments, the Court finds that Plaintiff's wrongful discharge claim is not

2   duplicative.

3       **2.      Defendants' Substantive Argument Fails**

4       Defendant further argues that Plaintiff's wrongful discharge claim should be

5   dismissed because he cannot satisfy the elements of the claim.  Def.'s Mot. at 17 (docket

6   no. 58).  To establish a wrongful discharge in violation public policy claim, Plaintiff

7   "must show (1) that his . . . 'discharge may have been motivated by reasons that

8   contravene a clear mandate of public policy,' and (2) that the public-policy-linked

9   conduct was a significant factor in the decision to discharge the worker."  *Mackey*,

10  12 Wn. App. 2d at 576–78 (quoting *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 723, 725,

11  425 P.3d 837 (2018)).  Wrongful discharge claims are generally limited to four scenarios:

12          "(1) where employees are fired for refusing to commit an illegal act; (2)
           where employees are fired for performing a public duty or obligation, such
13          as serving jury duty; (3) where employees are fired for exercising a legal
           right or privilege, such as filing workers' compensation claims; and (4)
14          where employees are fired in retaliation for reporting employer misconduct,
           i.e., whistle-blowing."
15

16  *Martin*, 191 Wn.2d at 723 (quoting *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931,

17  936, 913 P.2d 377 (1996)).  Termination for reporting discriminatory conduct has been

18  recognized as falling into both the third category, *see Mathews v. Karcher N. Am., Inc.*,

19  C21-5732, 2023 WL 3318613, at *11 (W.D. Wash. May 9, 2023), and the fourth

20  category of protected conduct, *see Mackey*, 12 Wn. App. 2d at 578.

21      Defendant argues that Plaintiff cannot satisfy the wrongful discharge elements

22  because his contention that he was discharged for reporting workplace safety violations is

23

1  not supported by the record.  "The WLAD sets forth an 'explicit, well-defined, and

2  dominant public policy'" against discrimination.  *Mathews*, 2023 WL 3318613, at *11

3  (quoting *Int'l Union of Operating Eng'rs, Loc. 286 v. Port of Seattle*, 176 Wn.2d 712,

4  722, 295 P.3d 736 (2013).  Further, "complaining about discriminatory conduct is

5  statutorily protected activity."  *Mackey*, 12 Wn. App. 2d at 579.  Because Plaintiff also

6  premises his wrongful discharge claim on being discharged for reporting discrimination,

7  Defendant casts its argument too narrowly.  Considering the evidence in the record, there

8  is a material issue of fact as to whether Plaintiff was terminated for reporting

9  discriminatory conduct or reporting protected activity, in violation of Washington public

10  policy.  Plaintiff's wrongful discharge in violation of public policy claim will remain for

11  trial.

12  **G.**    **Negligent Supervision and Hiring and Failure to Train Claim (Claim No. 13)**

13      To the extent this claim is premised on Defendant's negligence in hiring, training,

14  or supervising Sculfield, Defendant has adopted all of Sculfield's actions as its own.

15  Def.'s Mot. at 18 (docket no. 58).  "When the employer does not disclaim liability for the

16  employee, [a negligent hiring and supervision claim] collapses into a direct tort claim

17  against the employer, which requires dismissal of the negligent supervision claim."

18  *Brownfield v. City of Yakima*, 178 Wn. App. 850, 878, 316 P.3d 520 (2014) (internal

19  citation omitted).

20      To the extent the negligent supervision and hiring and failure to train claim is

21  premised on Green's, Denny's, Paget's, or Davis's conduct, Plaintiff relies on the same

22  facts to support this claim as he relies on for every other claim.  *See* Compl. at ¶¶ 203–06

23

(docket no. 1) (incorporating by reference the allegations from the ¶¶ 1–202, encompassing Claims 1–12, and adding no new facts).  When a negligent supervision and hiring and failure to train claim is based on identical facts as a discrimination claim, the negligent supervision and hiring and failure to train claim is duplicative and should be dismissed.  *Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 866, 991 P.2d 1182 (2000) (dismissing a negligent supervision claim as duplicative because the plaintiffs "rel[ied] on the same facts to support both their discrimination claim and their negligent supervision or retention claim").  Accordingly, Plaintiff's negligent supervision and hiring and failure to train claim is DISMISSED.

**H.**   **Constructive Discharge (Plaintiff's motion to establish constructive discharge as a matter of law)**

"A constructive discharge occurs when a person quits his job under circumstances in which a reasonable person would feel that the conditions of employment have become intolerable." *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998) (internal citation omitted).  To prove that he was constructively discharged, Plaintiff must establish that: (1) Defendant deliberately made his working conditions intolerable; (2) a reasonable person in his position would have been forced to quit; (3) he did quit because of the conditions and not for any other reason; and (4) he suffered damages as a result of being forced to quit.  *Barnett v. Sequim Valley Ranch, LLC*, 174 Wn. App. 475, 489, 302 P.3d 500 (2013).  "The 'intolerable' element can be shown by aggravated circumstances or a continuous pattern of discriminatory treatment.  A resignation is presumed to be voluntary, and the employee must introduce evidence to rebut that presumption."

*Washington v. Boeing Co.*, 105 Wn. App. 1, 16, 19 P.3d 1041 (2000) (internal citation omitted).  There are material issues of fact that preclude summary judgment in favor of Plaintiff on the issue of constructive discharge.  *See Washington*, 105 Wn. App. at 15; *Allstot v. Edwards*, 116 Wn. App. 424, 434, 65 P.3d 696 (2003).  Accordingly, the Court DENIES Plaintiff's motion to establish as a matter of law that he was constructively discharged.

**I.**   **Affirmative Defenses**

Federal Rule of Civil Procedure 12(f) authorizes the Court to strike "insufficient defense[s]."  "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense."  *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979) (citing *Conley v. Gibson*, 355 U.S. 41, 47–48 (1957)); *see also Grp. 14 Techs., Inc. v. Nexeon Ltd.*, C22-1354, 2023 WL 3599580, at *4 (W.D. Wash. May 23, 2023).

**1.**   **Affirmative Defense 1**

Defendant's first affirmative defense alleges that Plaintiff failed to state a claim upon which relief can be granted.  Am. Affirmative Defenses at ¶ 1 (docket no. 26).  Failure to state a claim is a not a proper affirmative defense and, therefore, this affirmative defense must be stricken.  *See Fraze v. Am. Behav. Health Sys. Inc.*, C22-5094, 2023 WL 4532429, at *6 n.3 (W.D. Wash. July 13, 2023).

**2.**   **Affirmative Defense 2**

Defendant's second affirmative defense alleges that Plaintiff's claims are barred by the doctrines of waiver, estoppel, and/or laches.  Am. Affirmative Defenses at ¶ 2

(docket no. 26).  Defendant previously struck this affirmative defense.  *See* Def's Resp. at 2 (docket no. 63).  Accordingly, Plaintiff's motion to strike this affirmative defense is moot.

### 3.      Affirmative Defense 3

Defendant's third affirmative defense alleges that Plaintiff failed to mitigate his damages.  Am. Affirmative Defenses at ¶ 3.  This defense is relevant, sufficiently pled, and will not be stricken.[4]

### 4.      Affirmative Defense 4

Defendant's fourth affirmative defense is the *Faragher/Ellerth* defense.  Am. Affirmative Defenses at ¶ 4.  *See also Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764–65 (1998).  This affirmative defense is only applicable to Plaintiff's hostile work environment claims.  *Cf Faragher*, 524 U.S. at 807–08 (articulating the elements for the affirmative defense in the context of a hostile work environment claim); *Burlington Indus.*, 524 U.S. at 764–65 (same); *see also Bauer v. Carson Tahoe Hosp.*, 212 F. App'x 654, 654–55 (9th Cir. 2006) ("[A]n employer may rebut the employee's prima facie case of hostile work environment by establishing an affirmative defense known as a *Faragher/Ellerth* defense.").  Because the Court has dismissed Plaintiff's hostile work environment claims, this defense is no longer relevant to the case.  Accordingly, this affirmative defense is STRICKEN from the case.

---

[4] This defense is relevant even if Plaintiff only seeks noneconomic damages.

1        **5.**    **Affirmative Defense 5**

2        Defendant's fifth affirmative defense alleges that any employment actions Plaintiff

3 experienced were taken in good faith for legitimate, non-discriminatory reasons.  Am.

4 Affirmative Defenses at ¶ 5.  This defense is a rebuttal to Plaintiff's burden to prove that

5 he was subject to discriminatory adverse employment actions.  "A defense which

6 demonstrates that plaintiff has not met [his] burden of proof is not an affirmative

7 defense." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) (internal

8 citation omitted).  Accordingly, this affirmative defense is STRICKEN from the case.

9        **6.**    **Affirmative Defense 6**

10        Defendant's sixth affirmative defense alleges that Plaintiff's damages must be

11 reduced to the extent that any after-acquired evidence would have materially affected the

12 terms of his employment with Defendants.  Am. Affirmative Defenses at ¶ 6.  Plaintiff

13 contends this defense is irrelevant because Defendant was aware of the false statements

14 on his resume and lack of supervisory experience both prior to hiring him and during his

15 employment, and because he is not seeking any economic damages.  Defendant contends

16 that had its Human Resources Department known that Plaintiff falsified his resume, he

17 would have been terminated.  Defendant further contends that it will introduce evidence

18 acquired during discovery regarding other potential causes or aggravating factors of

19 Plaintiff's mental health conditions.  After acquired evidence may be used to limit

20 noneconomic damages.  *See Loomis v. Heritage Operating, L.P.*, No. CV-04-617, 2007

21

22

23

1   WL 178269, at *2 (D. Idaho. Jan. 19, 2007).  The affirmative defense is, therefore,

2   relevant and has been adequately pled to give Plaintiff fair notice.

3   **<u>Conclusion</u>**

4   For the foregoing reasons, the Court ORDERS:

5   (1)   Plaintiff's motion for partial summary judgment and to strike affirmative

6         defenses, docket no. 53, is GRANTED in part and DENIED in part, and

7         Defendant's motion for summary judgment, docket no. 58, is GRANTED

8         in part and DENIED in part.

9   (2)   The following claims are DISMISSED with prejudice:

10        (a)   Plaintiff's ADA discrimination claim based on his disability, cause

11              of action no. 1.

12        (b)   Plaintiff's ADA and WLAD failure to accommodate claims, causes

13              of action nos. 3 & 9.

14        (c)   Plaintiff's ADA and WLAD hostile work environment claims,

15              causes of action nos. 2 & 8.

16        (d)   Plaintiff's negligent supervision and hiring and failure to train claim,

17              cause of action no. 13.

18  (3)   Defendant's affirmative defenses 1, 4, and 5 are STRICKEN.  Defendant's

19        affirmative defenses 3 and 6 will remain in the case.

20  (4)   The following claims remain for trial:

21        (a)   Plaintiff's Title VII and WLAD discrimination claims, causes of

22              action nos. 5, 7, & 10.

23

1          (b)     Plaintiff's ADA, Title VII, and WLAD retaliation claims, causes of

2                 action nos. 4, 6, and 11.

3          (c)     Plaintiff's wrongful discharge in violation of public policy claim,

4                 cause of action no. 12.

5          (d)     Whether Plaintiff was constructively discharged.

6    (5)     The Clerk is directed to send a copy of this Order to all counsel of record.

7    IT IS SO ORDERED.

8    Dated this 22nd day of December, 2023.

10                                Thomas S. Zilly

11                                  United States District Judge